UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY UPTON,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>  Defendant. | No. 2:15-cv-0767-CKD<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND

Plaintiff, born July 28, 1987, applied for SSI benefits on June 29, 2011, alleging disability beginning June 1, 1994. Administrative Transcript ("AT") 118, 224-33. Plaintiff alleged he was unable to work due to an oppositional/defiant disorder, a learning disability, bipolar disorder, major depression, asthma, migraine headaches, and back problems. AT 239. In a decision dated

////

December 5, 2013, the ALJ determined that plaintiff was not disabled.[1]  AT 12-24. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since June 29, 2011, the application date.
>
> 2. The claimant has the following severe impairments: borderline intellectual functioning, mood disorder with psychotic features, obsessive compulsive disorder.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

   capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant could perform simple repetitive one to two step job tasks, with occasional coworker contact. The claimant should avoid public contact.

   5. The claimant has no past relevant work.

   6. The claimant was born on July 29, 1987 and was 23 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

   7. The claimant has at least a high school education and is able to communicate in English.

   8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

   9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

   10. The claimant has not been under a disability, as defined in the Social Security Act, since June 29, 2011, the date the application was filed.

AT 14-24.

II.   ISSUES PRESENTED

Plaintiff's sole argument is that the ALJ erred by finding plaintiff not disabled because she improperly failed to include all of plaintiff's limitations supported by the record in her residual functional capacity ("RFC") determination.

III.   LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

"The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.   ANALYSIS

    A.   The ALJ did Not Err in Assessing Plaintiff's RFC

In his motion for summary judgment, plaintiff solely argues that the ALJ committed prejudicial error by not including all of plaintiff's limitations supported by the record in the RFC assessment. More specifically, plaintiff argues that the ALJ improperly assigned "substantial weight" to the opinion of State agency examining psychologist Dr. Nakagawa despite the fact that Dr. Nakagawa opined limitations that the ALJ appeared to impliedly reject by determining that plaintiff had an RFC that did not specifically contain such limitations.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81

1  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

2  rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at

3  830.  While a treating professional's opinion generally is accorded superior weight, if it is

4  contradicted by a supported examining professional's opinion (e.g., supported by different

5  independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

6  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

7  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

8  findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

9  minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

10  non-examining professional, without other evidence, is insufficient to reject the opinion of a

11  treating or examining professional.  Lester, 81 F.3d at 831.

12       Dr. Nakagawa performed a psychological examination of plaintiff on October 14, 2011,

13  which involved an interview with plaintiff and several tests measuring plaintiff's cognitive

14  abilities.  AT 504-07.  Based on this examination, Dr. Nakagawa opined that plaintiff could

15  "carry out simple job instructions."  AT 507.  She further opined that plaintiff's "emotional issues

16  . . . can negatively impact his ability to consistently respond to co-workers, supervisors, and the

17  public, and his ability to respond to usual work situations and deal with changes in routine work

18  settings."  Id.  Nevertheless, Dr. Nakagawa determined that "[w]ith appropriate treatment,

19  [plaintiff] may become stabilized and engage in viable work behaviors."  Id.

20       The ALJ assigned Dr. Nakagawa's opinion "considerable weight" because it comported

21  with the objective medical evidence in the record and the opinions of the State agency reviewing

22  physicians.  AT 23.  Plaintiff does not appear to contend that this reasoning was improper.

23  Rather, plaintiff argues that the limitations contained in the ALJ's RFC determination did not

24  accurately reflect some of Dr. Nakagawa's functional findings, therefore implying that the ALJ

25  improperly rejected those aspects of Dr. Nakagawa's opinion without providing any reasons for

26  doing so.  In particular, plaintiff asserts that Dr. Nakagawa opined that plaintiff was fully

27  restricted from interacting with supervisors, coworkers, and the public and that the ALJ's RFC

28  determination did not adequately reflect that assessed limitation because the ALJ assessed no

restrictions regarding contact with supervisors and only limited plaintiff to occasional coworker contact. Plaintiff's argument is without merit.

As the Ninth Circuit Court of Appeals has held, an ALJ may interpret assessed limitations into an RFC assessment without repeating each functional limitation verbatim in the RFC assessment provided that the limitations contained in the RFC determination accurately capture the claimant's level of functioning supported by the evidence. Stubbs-Danielson, 539 F.3d at 1173-74. Here, the ALJ's RFC determination was consistent with Dr. Nakagawa's findings, including those plaintiff argues the ALJ impliedly rejected. Contrary to plaintiff's assertion, Dr. Nakagawa did not opine that plaintiff was restricted from all interaction with supervisors, coworkers, and the public. Rather, she opined that "emotional issues . . . *can* negatively impact his ability to consistently respond to co-workers, supervisors, and the public," but that appropriate treatment would result in an improvement. AT 507 (emphasis added.) The ALJ construed this somewhat vague opinion to mean that plaintiff "had *possible* issues getting along with others, but . . . was still able to perform work activity." AT 23 (emphasis added). This was a reasonable interpretation of Dr. Nakagawa's opinion that was adequately encompassed by the ALJ's RFC determination that plaintiff had no limitations regarding interaction with supervisors, could engage in occasional interaction with coworkers, and could not interact with the public. AT 16. Even if a different interpretation could be given to Dr. Nakagawa's opinion, the court is required to uphold the ALJ's rational conclusion. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Moreover, the ALJ did not just rely on Dr. Nakagawa's opinion to arrive at her RFC determination regarding plaintiff's limitations regarding workplace social functioning. The ALJ also assigned "great weight" to the opinions of the State agency physicians who reviewed plaintiff's records, which included Dr. Nakagawa's opinion. AT 23, 105-17, 119-27. Dr. Gottschalk, the initial reviewing physician, opined that plaintiff was able to perform "1-2 step tasks, not requiring significant, close, coordinated interactions." AT 114. This opinion was reaffirmed upon review by a second State agency physician. AT 124. The ALJ properly

considered this opinion in addition to Dr. Nakagawa's opinion and made an RFC determination that reasonably encompassed both physicians' findings regarding the limitations plaintiff had with respect to social functioning.  Indeed, the ALJ's determination that plaintiff was limited from all public contact, moderately limited in his ability to interact with coworkers, and not limited with regard to contact with supervisors was a reasonable synthetization of the limitations opined by both Dr. Nakagawa and Dr. Gottschalk.

Finally, the medical evidence in the record provided substantial support for the ALJ's RFC determination.  Plaintiff's mental health records from throughout the relevant period show that plaintiff did not exhibit behaviors or other signs indicating that he could not interact with supervisors and had no more than moderate limitations with regard to his ability to interact appropriately in a social setting.  E.g., AT 505 (noting that plaintiff's "[m]ood was dysphoric," but that his "[s]ocial judgment was fair."), 515 ("He has a normal mood and affect.  His behavior is normal."), 557 (describing plaintiff's mood as "anxious," but noting that he was "[c]ooperative, attentive, and [made] continuous eye contact").  To be sure, the only evidence in the record indicating that plaintiff exhibited serious antisocial behaviors were those records issued in connection with the times when he was admitted to mental health treatment facilities for emergency care due to psychotic behavior resulting from cocaine or other amphetamine use, which stabilized after plaintiff was no longer intoxicated.  AT 450-53, 457-64.  The ALJ reasonably construed the findings provided in plaintiff's treatment and examination records to indicate that plaintiff had the social limitations provided in the ALJ's RFC determination.

The ALJ relied on substantial evidence from the record to support her RFC determination regarding plaintiff's social limitations that properly and reasonably encompassed the limitations contained within Dr. Nakagawa's opinion and the other physician opinions in the record.  Accordingly, the ALJ did not err in considering Dr. Nakagawa's opinion or in assigning it great weight in support of the RFC determination.  In addition, there was substantial evidence in the record to support the ALJ's overall RFC determination.[2]  Therefore, the ALJ's use of the

---

[2] The ALJ's determination that plaintiff was limited to simple repetitive one to two step job tasks mirrored the limitations opined by Dr. Nakagawa and Dr. Gottschalk with regard to that area of

limitations contained in that determination in the hypotheticals she posed to the vocational expert and her subsequent reliance on the vocational expert's testimony to find plaintiff not disabled at step five was not in error.

V.   CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  March 17, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 upton0767.ss

---

mental functioning.  AT 16, 114 (opining that plaintiff could carry out "1-2 step tasks"), 507 ("[Plaintiff] can carry out simple job instructions.").  Plaintiff does not appear to contest this determination.  Similarly, plaintiff does not appear to contest the ALJ's physical RFC determination that plaintiff could perform a full range of work at all exertional levels.  A review of the medical record regarding plaintiff's physical functioning reveals that there was substantial evidence to support the ALJ's determination.  Therefore, the aspects of the ALJ's RFC determination not directly contested by plaintiff were supported by substantial evidence.